# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARRYL WALKER,<br>　　　　*Plaintiff* | : | CIVIL ACTION |
| v. | : | |
| TRANS UNION LLC *et al.*,<br>　　　　*Defendants* | : | No. 20-5179 |

| | | |
|---|---|---|
| MARIE WALKER,<br>　　　　*Plaintiff* | : | CIVIL ACTION |
| v. | : | |
| TRANS UNION LLC *et al.*,<br>　　　　*Defendants* | : | No. 20-5235 |

## MEMORANDUM

PRATTER, J.　　　　　　　　　　　　　　　　　　　　　　　　　DECEMBER 10th, 2021

### INTRODUCTION

This is another of many cases in this District challenging the way that credit reporting agencies and furnishers of credit information report consumer credit accounts under the Fair Credit Reporting Act. The dispute here, like in other cases, challenges the way that credit reporting agencies report a credit account that at one time was past due but has since been closed. Plaintiffs Darryl and Marie Walker allege that Trans Union's reports are inaccurate and will potentially mislead creditors now and in the future regarding their credit histories. The Court, however, disagrees. Therefore, the Court will grant Trans Union's motion for judgment on the pleadings and its motion to dismiss.

1

## BACKGROUND

Darryl Walker and Marie Walker are husband and wife. Although they filed separate cases, their cases both involve, among other accounts, a disputed account that they share. Moreover, the Court's analysis for both cases is nearly identical. Therefore, the Court addresses together the pending motions in both cases. For the sake of clarity, however, the Court will recount separately the factual background of each case.

### I. *Walker v. Trans Union LLC, et al.*, No. 20-5179

Darryl Walker's claims against Trans Union relate to a single joint account for an automobile loan through AmeriCredit Financial Services, Inc. d/b/a GM Financial. Mr. Walker and Mrs. Walker took out a car loan on July 19, 2010, fully paid off that loan on April 16, 2015, and the account was closed on the same day. Mr. Walker, through counsel, sent a dispute letter to Trans Union on September 24, 2018. Trans Union responded with its investigation results on October 19, 2018.

The Trans Union investigation report states the following: (1) In the "Remarks" field, the account is marked as "Closed", (2) in the "Balance" field, the account is shown to have a $0 balance, (3) in the "Last Payment Made" field, the account shows the last payment was made on "04/16/2015", (4) in the "Date Closed" field, the account shows a "Maximum Delinquency of 60 Days" and that this delinquency occurred in "01/2015", (4) in the "Date Closed" field, the account is shown as being closed on "04/16/2015", the same date as the last payment. Doc. No. 1-5, at 3. However, in the "Pay Status" field, the account is listed as "30 Days Past Due Date." *Id.*

Based on these investigation results, Mr. Walker argues that Trans Union did not follow reasonable procedures to ensure the accuracy of the report about him and that it did not conduct a good faith investigation. Mr. Walker alleges that Trans Union continued to report an erroneous

"Pay Status" field on this closed account because his report stated the account was "30 Days Past Due Date" after the account had been closed. As a result, Mr. Walker argues that Trans Union violated the Fair Credit Reporting Act (FCRA) by (1) negligently and willfully failing to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information reported to third parties in violation of 15 U.S.C. § 1681e(b) and (2) failing to conduct a good faith investigation and failing to delete or modify inaccurate information after Mr. Walker disputed this information in violation of 15 U.S.C. §§ 1681i(a)(1)(A) and 1681i(a)(5). In addition, Mr. Walker alleges that Trans Union's action and/or inaction was willful, rendering it liable for actual, statutory, and punitive damages on both counts under 15 U.S.C §§ 1681n and 1681o.

Trans Union answered the complaint and GM Financial filed a motion to dismiss for failure to state a claim. Trans Union subsequently joined GM Financial's motion to dismiss and incorporated it as if set forth by Trans Union. However, Trans Union actually incorporated GM Financial's motion as a motion for judgment on the pleadings. Doc. No. 19 ¶ 3. Mr. Walker responded to each party separately. As to Trans Union, Mr. Walker filed a response in opposition, which also included a partial cross-motion for judgment on the pleadings on the issue of accuracy, and a motion for leave to amend in the alternative. Both GM Financial and Trans Union filed replies. Since then, Mr. Walker and GM Financial have settled, leaving only Trans Union as a party to this suit and leaving only Trans Union's motion for judgment on the pleadings to be resolved. At the oral argument, Mr. Walker withdrew the partial cross-motion for judgment on the pleadings. As a result, the Court considers Mr. Walker's briefing, Doc. No. 30, as a response and a motion for leave to amend his complaint. Trans Union filed its reply. The Court held oral argument on this motion.

## II. *Walker v. Trans Union LLC, et al.* No. 20-5235

Marie Walker filed a complaint against Trans Union and AmeriCredit Financial Services, Inc. d/b/a GM Financial regarding the same auto loan discussed above, as well as against Nelnet regarding three student loans. Trans Union is the only remaining defendant; the other two defendants have been dismissed.

Mrs. Walker, through counsel, sent a dispute letter to Trans Union on October 1, 2018, arguing that her credit report inaccurately reported these four accounts because the "Pay Status" section stated the four accounts were various periods of time past due even though the accounts were closed. Trans Union responded with its investigation results on October 24, 2018. As to the Nelnet Education account starting with 7830, the Trans Union investigation states the following: (1) In the "Remarks" field, the account is listed as "Closed", (2) in the "Balance" field, the account is shown to have a $0 balance, (3) in the "Last Payment Made" field, the account shows Ms. Walker's last payment was on "06/15/2015", (4) in the "Date Closed" field, the account shows a "Maximum Delinquency of 120 Days" and that this delinquency occurred in "12/2013", and (5) in the "Date Closed" field, the account is listed as having been closed on "06/15/2015," the same day Ms. Walker made her last payment. Doc. No. 1-5, at 2. As to the two Nelnet accounts starting with 1259, the report states the following: (1) In the "Remarks" field, the accounts are listed as "Acct Closed Due to Transfer; Transferred to Another Office", (2) in the "Balance" field, the accounts are shown to have $0 balances, (3) in the "Date Closed" field, the accounts show a "Maximum Delinquency of 120 Days" and that this delinquency occurred in "08/2014 and in 04/2015", and (4) in the "Date Closed" field the accounts are both listed as having been closed on "04/11/2015." *Id.* at 3–4. As to the fourth and final account, the joint GM financial account, the

4

information is identical to Mr. Walker's because it was their joint account for an automobile loan. *Id.* at 4.

Based on these investigation results, Mrs. Walker argues that Trans Union did not follow reasonable procedures to ensure the accuracy of the report about her and it did not conduct a good faith investigation. Mrs. Walker alleges that Trans Union continued to report an erroneous "Pay Status" field on these closed accounts because her report stated the accounts were various amounts of time past due. As a result, Mrs. Walker argues that Trans Union did not follow reasonable procedures to ensure the accuracy of her report and that they did not conduct a good faith investigation in violation of the same FCRA provisions that Mr. Walker alleged. Similarly, Mrs. Walker alleges that Trans Union acted willfully, in violation of the same FCRA provision that Mr. Walker alleges.

Trans Union moved to dismiss Mrs. Walker's claims. Mrs. Walker filed her response in opposition and included a motion for leave to amend in the alternative. Trans Union then filed its reply. The Court heard oral argument on these motions alongside the similar motions in Mr. Walker's case.

For the reasons that follow, the Court grants Trans Union's motion for judgment on the pleadings as against Mr. Walker and Trans Union's motion to dismiss as against Mrs. Walker.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The question is not whether the claimant "will ultimately prevail. . . but whether

5

his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation and internal quotation omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court may consider "only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). In addition, the Court must accept as true all reasonable inferences emanating from the allegations and view those facts and inferences in the light most favorable to the nonmoving party. *Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions").

As to a motion for judgment on the pleadings, a court analyzes both a motion to dismiss and a motion for judgment on the pleadings under the same legal standard. *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019). Under Fed. R. Civ. P. 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." A court may grant such a motion if the movant "is entitled to judgment as a matter of law" based on the pleadings. *Fed Cetera, LLC v. Nat'l Credit Servs., Inc.*, 938 F.3d 466, 469 n.7 (3d Cir. 2019) (internal quotation omitted). In other words, a motion for judgment on the pleadings can only be granted only if the non-movant cannot prevail under any set of facts. *Green v. Fund Asset Mgmt., L.P.*, 245 F.3d 214, 220 (3d Cir. 2001).

Beyond the complaint, a court can consider documents attached to the complaint or those "integral to or explicitly relied upon in the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (emphases and internal quotation omitted). Here, Mr. Walker, Mrs. Walker, and Trans Union attached the investigation reports to their various motions.[1] Because the investigation reports and the information contained in them are "integral to" and "explicitly relied upon in the complaint," the Court will consider and refer to the investigation reports in resolving the present motions.[2]

## DISCUSSION

To state a viable claim under the FCRA, the Walkers must establish that the information in their credit reports was inaccurate. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 708, 712–13 (3d Cir. 2010); *see also Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x 896, 904 n.9 (3d Cir. 2011) (per curiam) (same). The Court does not need to reach or consider the reasonableness of a credit reporting agency's procedures under 15 U.S.C. § 1681e or the reasonableness of a credit reporting agency's reinvestigation under § 1681i unless the information contained in the report is inaccurate. *See Angino v. Trans Union, LLC*, 784 F. App'x 67, 69 (3d Cir. 2019) ("[W]e can assume that absent any indication that the information is inaccurate, [§ 1681i] does not mandate further investigation." (internal quotation omitted)).

---

[1] Mrs. Walker attached Trans Union's investigation report to her original Complaint, but not her Amended Complaint. *See* Case. No. 20-5235, Doc. Nos. 1 & 37. Nevertheless, the Court will still consider the attached report from her original Complaint, Doc. No. 1, even though it is not the operative Complaint at this stage of the litigation.

[2] An "investigation report" is not the same as a "credit report." However, the parties here provided copies of the investigation reports and request that the Court use the investigation reports to determine the accuracy of the information regarding the Walkers' various accounts. The Court will "accept the parties' representation [that] we can determine the accuracy of the report[s] using the investigation results." *Bibbs v. Trans Union LLC*, 521 F. Supp. 3d 569, 574 (E.D. Pa. 2021). Therefore, the Court will refer to the investigation reports as Mr. and Mrs. Walker's credit reports throughout, except when briefly distinguishing the information in an investigation report that is not included in a credit report in Section I, *infra*.

Information is "inaccurate" within the meaning of the FCRA if it is incorrect or "misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014). "[A] consumer report that contains technically accurate information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression." *Schweitzer*, 441 F. App'x at 902 (quoting *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 148 (4th Cir. 2008)).

Generally, the question of whether information that is "technically correct" is still materially misleading is a question for a jury. *Gibbs v. Trans Union LLC*, No. 21-cv-667, 2021 WL 4439546, at *2 (E.D. Pa. Sept. 28, 2021); *Smith v. Trans Union LLC*, No. 20-cv-4903, 2021 WL 1061213, at *2 (E.D. Pa. Mar. 19, 2021). However, where a court views the information in its entirety and determines that only one reasonable interpretation of the report exists, a court may determine a report's accuracy as a matter of law. *Gibbs*, 2021 WL 4439546, at *2 (citing *Samoura v. Trans Union LLC*, No. 20-cv-5178, 2021 WL 915723, at *4 (E.D. Pa. Mar. 10, 2021)).

In assessing the information in a consumer's credit report, a court must view the information "through the lens of a person in a position to make an adverse decision based on a credit report, *i.e.*, a creditor." *Bibbs v. Trans Union LLC*, 521 F. Supp. 3d 569, 574 (E.D. Pa. 2021); *Gibbs*, 2021 WL 4439546, at *2; *Smith*, 2021 WL 1061213, at *2. In other words, it does not matter whether the report is inaccurate or misleading in the *consumer's* opinion. *Dickens v. Trans Union Corp.*, 18 F. App'x 315, 318 (6th Cir. 2001). In reviewing the accuracy of a credit report, a court reviews the report in its entirety. *Gibbs*, 2021 WL 4439546, at *2; *see Bibbs*, 521 F. Supp. 3d at 571; *see also Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1252 (11th Cir. 2020) ("[T]he fact that some user somewhere could possibly squint at a report and

8

imagine a reason to think twice about its subject would not render the report objectively misleading.").

At the oral argument on this motion, the Walkers argued that the language of the FCRA does not lend itself to the interpretation that a court must consider the information in a credit report from the perspective of a creditor. The Walkers contended that this reads too much sophistication into the "reasonableness" standard. Instead, the Walkers argued that the FCRA only contemplates "users" of the information and not parties that would be in a position to make an adverse decision based on the information, such as creditors. *See, e.g.*, 15 U.S.C. § 1681e(a) (referring to "users"). The Court considers these to be operably the same; in other words, a "user" of credit information is most likely to be a creditor. Nevertheless, even if the Walkers are right and the Court views the credit information from the perspective of some less sophisticated "user," this does not alter the outcome of the present motions.

For sake of clarity, the Court will briefly address each of the Walkers' arguments.

### I. The "Pay Status" Fields of the Walkers' Credit Reports Are Not Inaccurate Nor Misleading When the Reports Are Considered as a Whole

As an initial matter, both Mrs. and Mr. Walker make a great hullabaloo of the "Pay Status" field in their Trans Union credit reports. They argue that because the accounts are closed, it is inaccurate or misleading to report the "current status" of the accounts as past due. The Walkers base this argument on the definition of the field provided in the glossary of terms that Trans Union attached to its investigation report. There "Pay Status" is defined as: "The current status of the account; how you are currently paying." Case No. 20-5179, Doc. No. 30-1, at 2; Case No. 20-5235, Doc. No. 50-1, at 2. But it turns out this cacophony was actually the sound of silence; it is an argument that other courts have handily dismissed.

9

As the Court explained in *Bibbs*, the *investigation report* that the parties attached to their briefs is not the same as a *credit report* seen by a potential user or creditor. *Bibbs*, 521 F. Supp. 3d at 574–75. In other words, the investigation reports are not what a reasonable user or creditor would see when reviewing the Walkers' credit reports or account information. *Id.* at 574. Therefore, even considering the investigation reports as evidence of the accounts, as the parties ask the Court to do, the definition of "Pay Status" provided in the investigation report is entirely irrelevant. *Id.* at 575; *see also Smith v. Trans Union LLC*, No 20-cv-4233, 2021 WL 4818267, at *5 n.40 (E.D. Pa. Oct. 14, 2021) (same). Because the Court analyzes the account information from the perspective of a reasonable user or creditor who does not have access to the investigation report's glossary, the definition of the "Pay Status" field in Trans Union's report is beside the point.[3]

Viewing the Walkers' credit reports as a whole, as the Court must, *see, e.g., Gibbs*, 2021 WL 4439546, at *2, neither Mrs. Walker's nor Mr. Walker's credit report are "inaccurate" or "misleading" such that it would have an adverse effect on either of them. *Seamans*, 744 F.3d at 865 (internal quotation omitted); *Schweitzer*, 441 F. App'x at 902.

Starting with Mr. Walker's account first: From the perspective of a reasonable person, user or creditor, viewing Mr. Walker's report in its entirety and considering all of the various fields, there is one reasonable reading: Mr. Walker was delinquent on the GM Financial auto loan in January 2015 and he made his last payment on April 16, 2015, bringing the balance of the account

---

[3] The Court also notes that even if it were to consider the glossary in Trans Union's report as relevant, which it does not, that same glossary states: "For inactive accounts or accounts that have been closed and paid, **Pay Status** represents the last known status of the account." Case No. 20-5179, Doc. No. 30-1, at 2; Case No. 20-5235, Doc. No. 50-1, at 2 (emphasis in originals). In other words, even if the Court were to countenance the Walkers' legally flawed argument, it would actually work against them as to the GM Financial account and as to Mrs. Walker's Nelnet account starting with 7830, both of which have been paid and closed.

10

to $0, thus also closing the account on the same day. The account was closed in April 2015, is marked as being "Closed," and remains closed. In short, there is nothing inaccurate or misleading about the information on Mr. Walker's account as he claims.

As to Mrs. Walker's accounts, the analysis is, unsurprisingly, substantially the same. As to the GM Financial loan, the information is identical to that just described for the same account on Mr. Walker's report. *Compare* Case No. 20-5179, Doc. No. 1-5, at 3, *with* Case No. 20-5235, Doc. No. 1-5, at 4. As to the two Nelnet accounts starting with 1259, there is similarly only one reasonable reading: Mrs. Walker was twice delinquent on these loans, in August 2014 and April 2015, the accounts have since been closed due to being transferred, Mrs. Walker currently owes $0 on both accounts, the accounts are marked as "Closed," are closed, and remain closed.[4] Likewise, as to Mrs. Walker's Nelnet account starting with 7830, there is only one reasonable reading: Mrs. Walker was delinquent on this loan in December 2013, the account has since been closed, Mrs. Walker currently owes nothing on the account, the account is marked as "Closed," is closed, and remains closed. In other words, no reasonable person would be misled by the information in Mrs. Walker's report.

As to the Walkers' joint GM Financial account that was closed upon being paid off and Mrs. Walker's Nelnet account starting with 7830 that lists the last payment on the same date as it was closed, this Court and other courts have come to a similar conclusion based on similar facts. *Holland v. Trans Union LLC, et al.*, No. 21-152, Doc. No. 80 at 9; *Gibbs*, 2021 WL 4439546, at *3; *Ostrander*, 2021 WL 3271168, at *9. As to Mrs. Walker's Nelnet accounts starting with 1259

---

[4] The Court also notes that Trans Union estimated these accounts would be removed from Mrs. Walker's credit report in April 2021. Doc. No. 1-5, at 3–4. The same goes for the GM Financial account for Mrs. Walker, which was estimated to be removed in October 2021. *Id.* at 4. In other words, the claims as to these accounts may be moot. Nevertheless, for the sake of completeness, the Court will address and analyze them.

11

that were closed when transferred, numerous courts have considered similar facts and come to the same conclusion. *See, e.g.*, *Bibbs*, 521 F. Supp. 3d at 579–80; *Patterson v. Sterling Jewelers Inc.*, No. 21-cv-2138, 2021 WL 4592158, at *3–4 (E.D. Pa. Oct. 6, 2021); *Samoura*, 2021 WL 915723, at *7, *9.

There is certainly room for debate that some information on the Walker's reports could be *more* accurate.[5] However, as to two of the three of Mrs. Walker's Nelnet accounts, the Court is of the belief that the information is already just as accurate as Mrs. Walker demands. The Court recently decided a nearly identical case, *Jackson v. Trans Union, LLC, et al.*, No. 21-cv-23, Doc. No. 46, in which the same counsel for Mrs. Walker here argued that the notation "Closed" in the accounts at issue in that case did not capture the fact that they had actually been closed when they were transferred. *Id.*, at 9. In that case, the plaintiff argued that the accounts should have included the notation "Acct Closed Due to Transfer." *See id.*, Doc. No. 18, at 3. But here, Mrs. Walkers two accounts starting with 1259, the two that were closed upon being transferred, contain *precisely* that notation. *See* Case No. 20-5235, Doc. No. 1-5, at 3–4. And, as Mrs. Walker acknowledges, three other courts within this district found reports with accounts containing such a notation to be accurate as a matter of law. *See Bibbs*, 521 F. Supp. 3d at 579–80; *Parke v. Trans Union, LLC*, No. 20-cv-4487, Doc. No. 32 (E.D. Pa. Mar. 5, 2021); *Samoura*, 2021 WL 915723, at *8. Thus, Mrs. Walker is left with arguing only that these other cases are not controlling on this Court. But the Court is not so easily swayed.

---

[5] It is true that the FCRA requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information." 15 U.S.C. § 1681e(b). However, the Court only reaches the question of whether a credit reporting agency followed such procedures if it first determines that the report contained *inaccurate* information. *See Cortez*, 617 F.3d at 708. Because the Court determined that the Walkers' reports contained no inaccurate information, it does not reach this issue.

12

As to the Nelnet account starting with 7830 that is listed as "Closed" and the Walkers' joint GM Financial Account that is listed as "Closed," there is room for debate that they could contain a notation in the "Remarks" field that would make them *more accurate*.[6] Indeed, perhaps they could both state "Closed After Paid in Full" or, more simply, "Paid in Full." But this argument with semantic overtones fails for three separate reasons: law, logic, and policy.[7]

First, as a matter of law, the Court's only job is to consider whether the information is *inaccurate* or *misleading*, not ways that the information might be *more and more and more accurate*. *Bibbs,* 521 F. Supp. 3d at 579. In other words, the Court's job is to discern differences of kind, not degree. The Court, is, thankfully, not in the business of tutoring credit agencies. *See id.* ("Congress does not direct us to teach credit reporting agencies on the use of 'better' language... We are not venturing into speculative word games....").

Second, on a very elemental level, there is a vast difference between information that could be *more accurate* and information that is *inaccurate*. For example, the power button on a television remote might only say "Power" or "On" and it might be *more accurate* if it said, "Press Firmly to Turn On." And yet, no reasonable user of a television remote would argue that the power button on the remote is *inaccurate*. The Walkers' attempt to collapse the concepts to be one and the same is ineffective.

---

[6] Trans Union gave Mrs. and Mr. Walker the opportunity to make their reports *more accurate* by allowing them to add a note or statement of up to 100 words to the reports. Case No. 20-5235, Doc. No. 50-1, at 7. While Mr. Walker omitted the pages of his report containing this same language, the Court is familiar enough with Trans Union investigation reports at this point to know the same language would be included in Mr. Walker's report. In other words, the Walkers had the opportunity to make their reports *more accurate*.

[7] This is now the third consecutive decision where the Court is making the identical point in the identical language. At risk of conjuring Beetlejuice by saying it three times in a row, the Court will, nevertheless, proceed. *See* Tim Burton, Beetlejuice, 1988.

Third, as a matter of policy, if the Court were to grant the Walkers' request, there would be no way to cabin the effects. If information in a credit report that could be *more accurate* is *inaccurate* for purposes of the FCRA, then every single consumer in the United States would be able to state a claim under the FCRA. For example, the Walkers believes their GM Financial account would be accurate if it had a notation that it was "Paid in Full." So too does Mrs. Walker as to her Nelnet account starting in 7830. But would it not also be more accurate to state that they were "Paid in Full On Final Payment"? Or "Closed With No Remaining Balance"? Perhaps. But if a plaintiff could make a claim under the FCRA that credit information was inaccurate simply by alleging, entirely subjectively, that there is a "better" way to report it, federal courts would have to take a break from dispensing justice in order to juxtapose jumbled gerunds and genitives.

## II. Mrs. Walker's Additional Claim in Her Responsive Briefing Is Inapposite at This Stage

Mrs. Walker (though not Mr. Walker) raises, for the first time in her response, a claim that her credit report is misleading computer algorithms because these algorithms allegedly read the "Pay Status" field in isolation. Case No. 20-5235, Doc. No. 50, at 6.

In a motion to dismiss, the Court only considers the allegations raised in the complaint. *Pension Ben. Guar. Corp.*, 998 F.2d at 1196. Because this allegation is not in her complaint, Mrs. Walker cannot rely on this argument in her opposition brief. *See Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition. . . .") (internal quotation omitted)). Mrs. Walker is free to raise this allegation in an amended pleading, if she so desires. But because this allegation is not in her complaint, the Court will not address it.

14

### III. The Court's Decision Is in Accord With the Majority of Other Courts in This District to Have Considered This Issue

It is true that certain courts have attempted to distinguish facts in the way that the Walkers suggest or to reconcile seemingly irreconcilable cases by comparing the facts. *See e.g. Bibbs*, 521 F. Supp. 3d at 576–80 (discussing numerous cases); *Samoura*, 2021 WL 915723, at *5–8 (same); *Smith*, 2021 WL 1061213, at *3 (discussing factual distinctions). However, rather than attempting to reconcile these cases, this Court will again state the plain truth: The Third Circuit Court of Appeals has yet to rule on this issue and courts in this district have, at times, come to irreconcilable conclusions on seemingly identical sets of facts.

The two cases here, containing accounts that were closed when transferred and accounts that were closed when they were paid off in full, mix two factual scenarios that have led to two strands of cases even within this district. On the one hand, there is the *Bibbs*, 521 F. Supp. 3d 569, *Samoura*, 2021 WL 915723, *Parke*, No. 20-cv-4487, Doc. No. 32, line of cases dealing with accounts that had been closed when they were transferred and/or consolidated. On the other hand, there is the *Smith*, 2021 WL 1061213, *Ostrander*, 2021 WL 3271168, and *Gibbs*, 2021 WL 4439546, line of cases addressing accounts that were closed when the account holder paid off the account in full, simultaneously closing the account. Other courts within this district have often adhered to this distinction if for no other reason than because a plaintiff's accounts in any given case only involved one type of closed accounts.[8] Here, however, the Court is in the opportune position (if one can call it that), of confronting both types of accounts simultaneously: The Walkers' joint account with GM Financial and Mrs. Walker's Nelnet account starting with 7830

---

[8] Indeed, this Court adhered to this distinction in its two recent cases because each involved only one or the other type of account. *See Jackson v. Trans Union, LLC*, No. 20-cv-23, Doc. No. 46 (transferred accounts); *Holland v. Trans Union LLC, et al.*, No. 21-152, Doc. No. 80 (paid and closed account).

15

were closed when they were paid in full, while Mrs. Walker's two Nelnet accounts starting with 1259 were closed when they were transferred. Therefore, the Court is in the position to address both lines of cases.

But, even referring to them as two distinct lines of cases is a misnomer. The factual distinctions between accounts that were closed due to being transferred versus accounts that were closed because they were paid in full is, as one court in this district aptly remarked, "a distinction without a difference." *Gibbs*, 2021 WL 4439546, at *3. Indeed, another court in this district also stated "[T]he plaintiff makes no attempt to explain why the distinction between transferred and non-transferred accounts matters. He does not explain, for example, why those courts' approach of reading the credit report as a whole and the logical conclusions to be drawn therefrom do not apply equally to accounts that are not transferred." *Ostrander*, 2021 WL 3271168, at *8. This Court agrees, and points out, in passing, that other decisions, such as *Smith*, 2021 WL 1061213, are not binding on this Court. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011); *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991). Therefore, the Court opts to follow *Ostrander* and *Gibbs*.

In the past several months, certainly, there has been a growing consensus that a credit report listing a presently-closed account as past due at some point in the past is not "inaccurate" for purposes of the FCRA when the report, considered as a whole, demonstrates to a reasonable person that the account is, in fact, closed.[9] And, more specifically, there is a growing consensus that a

---

[9] *See, e.g., Bibbs v. Trans Union LLC*, No. 20-cv-4514, 521 F. Supp. 3d 569 (E.D. Pa. Feb. 23, 2021); *Smith v. Trans Union LLC*, No. 20-cv-4233, 2021 WL 4818267 (E.D. Pa. Oct. 14, 2021); *Patterson v. Sterling Jewelers Inc.*, No. 21-cv-2138, 2021 WL 4592158, (E.D. Pa. Oct. 6, 2021); *Gibbs v. Trans Union LLC, et al.*, No. 21-cv-667, 2021 WL 4439546 (E.D. Pa. Sep. 28, 2021); *Ostrander v. Trans Union LLC, et al.*, No. 20-cv-5227, 2021 WL 3271168 (E.D. Pa. July 30, 2021); *Samoura v. Trans Union LLC*, No. 20-cv-5178, 2021 WL 915723 (E.D. Pa. Mar. 10, 2021); *Parke v. Trans Union, LLC*, No. 20-4487, Doc. No. 32 (E.D. Pa. Mar. 5, 2021).

credit report listing a presently-closed account that was paid in full on the final payment as past due is not "inaccurate" for purposes of the FCRA when the report, considered as a whole, demonstrates to a reasonable person that the account is, in fact, closed.[10] Here, the Court will tie these strands together and state this conclusion (which is really just a reframing of the legal standard): A credit report listing a "Pay Status" or "Status" as past due at some point in the past is not inaccurate as a matter of law when the credit report, considered as a whole, demonstrates to a reasonable person that the account was, is, and continues to be closed.

Therefore, the Court grants Trans Union's motion for judgment on the pleadings as against Mr. Walker and Trans Union's motion to dismiss as against Mrs. Walker.

## IV. The Walkers May Seek Leave to Amend

In the alternative to their responses to Trans Union motions, the Walkers now seek leave to amend their complaints to correct their deficiencies (even though they could have done so when the motions were first filed and expedited the case(s)). The Walkers are right that a "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). And the Walkers are also right that courts are directed to "generally" grant such requests. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). On the other hand, "to request leave to amend a complaint, the plaintiff must submit a draft amended complaint to the court so that it can determine whether amendment would be futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007). The Walkers did not do so here.

Splitting the difference, the Court grants both Mrs. Walker and Mr. Walker leave to *seek leave* to amend their respective complaints. Therefore, in a technical sense the Court denies both

---

[10] *See, e.g., Gibbs*, 2021 WL 4439546, at *3; *Ostrander*, 2021 WL 3271168, at *9.

Mrs. Walker's and Mr. Walker's present motions to for leave to amend their complaints but will grant them each the opportunity to file a new motion for leave to amend with the amended pleading appropriately attached.

## CONCLUSION

For the foregoing reasons, the Court grants both Trans Union's Motion for Judgment on the Pleadings and Motion to Dismiss and denies both Mrs. Walker's and Mr. Walker's Motions for Leave to Amend. An appropriate order follows.

BY THE COURT:

**GENE E.K. PRATTER**
UNITED STATES DISTRICT JUDGE